Florence Aaron et al., Appellees, v. Mary Dausch et al., Defendants.

Appeal of Marie Nordquist, Appellant.

Gen. No. 41,942.

Heard in the third division of this court for the first district at the October term, 1941. Opinion filed April 8, 1942.

JOHN B. KING, of Chicago, for appellant.

KARGMAN & KARGMAN, NATHAN SCHWARTZ and MAURICE L. DAVIS, all of Chicago, for certain appellees.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On October 8, 1930, Mary Dausch executed a trust deed conveying the premises at 651 Melrose street, Chicago, to the Chicago Title & Trust Company to secure the payment of a principal note for $8,500, due one year after date, and two interest coupons for $255 each. In a complaint filed in the superior court of Cook county on May 7, 1940, Florence Aaron, representing herself to be the holder and owner of the principal note and trust deed, sought to foreclose the lien of such trust deed. On March 4, 1941, the complaint was amended by adding Marie Kargman as an additional plaintiff, and by inserting an allegation that the original plaintiff, Florence Aaron, instituted the proceeding as the nominal owner and holder of the principal

note and the interest note due October 8, 1931, and that Marie Kargman was the actual beneficial owner of the notes. On March 5, 1941, Mary Dausch filed her second amended answer. This answer stated that the trust deed and notes were executed by her to Marie Nordquist for a past indebtedness; denied that Florence Aaron or Marie Kargman was the owner of the trust deed and notes; denied that any money was due to plaintiffs; denied that the trust deed was a valid lien on the premises; alleged that the filing of the complaint was part of a conspiracy to acquire the property; stated that the trust deed and notes were placed in escrow by her with the Sheridan Trust and Savings Bank to secure the payment of an indebtedness to the bank, which indebtedness was past due at the time the trust deed and notes were placed with the bank; that the mortgage in suit was the property of Marie Nordquist, defendant's daughter; and that Marie Nordquist is the sole and exclusive owner of the note evidencing the balance of the indebtedness. On February 24, 1941, Marie Nordquist filed her intervening petition, stating that on October 8, 1930, her mother, Mrs. Mary Dausch, being indebted to her in the sum of $8,500, executed the trust deed and notes; that the trust deed and notes were left at the Sheridan Trust & Savings Bank as her property for safe keeping, with instructions to the bank to record the trust deed; that she made the bank her agent for the sole purpose of recording the trust deed and holding that instrument and the note for her use; that she did not know that the trust deed and note were pledged as collateral to any note held by the bank; that she did not authorize anyone to pledge the trust deed and note as collateral; that she did not know that the trust deed and note had been pledged as collateral until January 1, 1941; that the bank at all times knew that the note and trust deed were the property of petitioner; that after being advised that the note was in

the hands of the receiver for the bank, and in order to protect her interest and minimize her damages, and after taking the advice of an attorney she purchased her mother's collateral note from the bank; that because of the purchase of this collateral note, she (Marie Nordquist) became the sole owner of the trust deed and note sought to be foreclosed, and that she offered to repay plaintiffs the money paid by them for the purchase of the trust deed and note. She prayed that the court find her to be the owner of the trust deed and notes. Plaintiffs denied the material allegations of the intervening petition. The case was heard by the chancellor, who entered a decree finding that Marie Kargman was the actual beneficial owner of the principal note for $8,500 and the trust deed securing it; and that the interests of all other parties were subject to the rights of Marie Kargman. The decree directed that payment be made within three days in default of which the master in chancery was to sell the real estate. Marie Nordquist, intervenor, appeals.

The chancellor heard the witnesses and read the exhibits. We have examined the record to determine whether the findings are supported by the evidence. The Sheridan Trust & Savings Bank was a State bank with its place of business at Broadway and Lawrence avenues in Chicago. This bank was forced into liquidation in 1931 and a receiver was appointed by the State Auditor. Among the assets of the bank the receiver found Mrs. Dausch's collateral note and the trust deed and notes now in suit, all of which were later sold. We find that there is competent evidence in the record to establish that Marie Dausch (intervenor's mother) first became indebted to the bank on April 30, 1928, when she borrowed $2,000; that her financial statement to the bank at that time showed her sole liability to be upon a first mortgage for $49,000; that the loan by the bank to her was increased on July 12, 1928, to $6,000; that John Meyer and William Kempf

acted as comakers with Mrs. Dausch, upon the note given to the bank; that by May 15, 1930, the loan to Mrs. Dausch had been reduced to $5,490; that John Meyer was then the sole comaker; that on August 14, 1930, a further renewal note was executed by Mrs. Dausch and John Meyer for $5,490 due September 15, 1930; that on August 19, 1930, Mrs. Dausch furnished the bank with further financial statements; that from these statements it appeared that she was the owner of the property at 651 Melrose street, Chicago (involved in this appeal); that the first mortgage on the property was $61,000; that the second mortgage was $3,000, and that she had no obligations other than her bank loan of $5,490; that on October 8, 1930, when the August 14, 1930, note was about three weeks past due, Mrs. Dausch came to the bank and executed a collateral note for $5,490, pledging as security for her loan the $8,500 third mortgage involved in the instant case. The evidence shows that the collateral note signed by Mrs. Dausch on October 8, 1930, was in renewal of the August 14, 1930 note signed by her and John Meyer. It will be observed that the third mortgage note and the collateral note bear the same date, namely, October 8, 1930. The bank record shows that on October 8, 1930, Mrs. Dausch gave collateral for the renewal note signed on October 8, 1930, and that her collateral note was thereafter renewed from month to month, the last renewal being on May 11, 1931. Mrs. Dausch testified that the only collateral she ever gave to the bank was the $8,500 third mortgage, and that she had no other collateral to give. Intervenor's theory of the case is that her mother, Mrs. Mary Dausch, gave her (intervenor) the $8,500 note and trust deed for monies she (intervenor) had loaned to Mrs. Dausch to buy the property conveyed by the trust deed in suit; that she left the trust deed and note with the bank for the sole purpose of having the trust deed recorded, for which she paid the bank a fee of $13; that they were sub-

sequently pledged to the bank by her mother without intervenor's knowledge or consent; that the bank knew they were not the property of her mother, but that they belonged to intervenor, who knew nothing of the pledge being made; that by that transaction the bank obtained no right, title or interest in them; that when the bank's assets went into the receiver's hands he obtained no greater rights than the bank had; that the pretended sale of the collateral by the receiver's office was not conducted according to law and did not convey any title; that when she purchased her mother's collateral note from the receiver, it carried with it the $8,500 note and trust deed, and that she became the owner of the latter through the purchase of the collateral note. A perusal of the transcript of the testimony and of the exhibits convinces us that the chancellor was right in finding that on October 8, 1930, when Mrs. Dausch signed and delivered the collateral note for $5,490, she also delivered as collateral on such note the $8,500 trust deed and note involved in the instant case, and that at the time of the delivery of the collateral the bank did not know that intervenor had or claimed to have any interest therein.

Intervenor maintains that the $8,500 note and trust deed are her property; that the bank in accepting the trust deed and note as security for the loan to her mother with knowledge of her rights as the owner of the securities, took them subject to her rights; that the bank could not retain the securities as against her right to the same, and that the receiver stands in the same position as the bank. There is no dissent to these statements of law. The receiver had no greater rights than the bank. If the bank knew, or by the exercise of reasonable diligence should have known that the securities deposited with it as collateral were the property of intervenor and that she was not consenting to their use as collateral, the position of the intervenor would be correct. The evidence satisfied the chancellor and

satisfies us that the bank acted honestly in accepting the securities as collateral on the loan to intervenor's mother, and that it did not know intervenor claimed any interest in such securities. It is interesting to observe that although the collateral was given on October 8, 1930, the first claim asserted by intervenor was on February 24, 1941. The bank was closed in 1931 and it is highly improbable that intervenor would wait ten years before endeavoring to ascertain what had become of the trust deed and note which she claims, to own. The position of plaintiff Marie Kargman that the bank acquired good title to the trust deed and note is supported by the preponderance of the evidence.

Intervenor contends that the proposed sale by the receiver was a nullity. Frank L. Johnson testified for plaintiff that he was employed by the receiver; that the collateral consisting of the trust deed and notes involved in the instant case were in the possession of the receiver; that a sale of the collateral was held on March 18, 1940; that he (witness) conducted the sale; that a notice of the sale was sent to Mrs. Mary Dausch by registered mail; that the sale was held in the lobby of the office building occupied by the receiver; that no one bid on the collateral; that witness, on behalf of the receiver, purchased the collateral for $350 and that the collateral note was credited with this sum. The circuit court of Cook county, in which the bank liquidation proceeding was pending, approved the reduction of the collateral to the possession of the receiver. Nathan Schwartz purchased the collateral from the receiver for $350 and the circuit court confirmed this sale. The collateral note of May 11, 1941, provides that the bank or any holder of the note might, without demand or notice, sell the collateral at a public or private sale, and also that the bank or any holder might purchase the collateral at such sale. The evidence shows that Johnson was acting for the receiver; that the collateral was offered for sale, and that in the ab-

sence of bidders the receiver reduced the collateral to his possession at a price of $350. This was in accordance with the express language of the collateral note. In our opinion, the sale was proper. We agree with the suggestion of plaintiff that even if the sale at which the collateral was purchased by the receiver at his own sale were technically incorrect, the sale to Nathan Schwartz may be treated as a valid exercise of the power of the holder of the collateral note to sell the collateral at private sale without notice. Intervenor urges that the receiver had no right to purchase at his own sale. The collateral note provides that the bank or any holder "may purchase any or all of said property at any such sale or sales." The sale was in accordance with the language of the collateral note. Intervenor insists that neither plaintiff has a right to maintain the instant foreclosure suit. The original complaint was filed by Florence Aaron, who asserted that she was the holder and owner of the principal note and trust deed. The complaint was amended by adding Marie Kargman as a plaintiff. Intervenor states that the real plaintiff is Nathan Schwartz, who appears as one of the attorneys for plaintiffs. The latter testified that the notes and trust deed came into his possession on April 9, 1940, when they were sent to him by the receiver; that he paid $350 for them, which payment was made for his client, Florence Aaron; that Florence Aaron was his secretary; that in reality she was an agent to collect for Marie Kargman, for whom the securities were acquired. If it be true, as intervenor states, that Nathan Schwartz is the real owner of the trust deed and notes, intervenor is not harmed in any way by that fact. After having testified that the owner is Marie Kargman, Nathan Schwartz would be estopped to deny that she is the owner. We have held that the holder of a note may prosecute a foreclosure action. *Replogle v. Scott,* 299 Ill. App. 270. It is undisputed that Marie

Kargman is the holder. Plaintiffs introduced the trust deed and notes, thus precluding the possibility of anyone else suing on them. We are of the opinion that plaintiffs had the right to file and prosecute the instant foreclosure case.

For the reasons stated, the decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

HEBEL and KILEY, JJ., concur.